IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUIS MUNUZURI HARRIS,
     Plaintiff,

vs.                    Case No.: 5:13cv382/WS/EMT

DEREK L. WILKES, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Luis Munuzuri Harris, an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  In his amended complaint (ECF No. 15), the operative pleading, Plaintiff sues Michael D. Crews, former Secretary of the FDOC, and five correctional officers employed by the Apalachee Correctional Institution ("ACI"), the institution where Plaintiff was housed at the time of the events giving rise to his complaint: Captain Derek L. Wilkes, Sergeant Robert Adams, Christopher I. Deese, Sergeant Anthony Manzella, and "Mr. Amons" (*id*. at 1–2).[1]  Presently before the court is a Motion to Dismiss for failure to exhaust available administrative remedies

_____

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

filed by Defendants Adams, Amons, Deese, Manzella, and Wilkes[2] (ECF No. 36).

Plaintiff responded in opposition to the motion (ECF No 38).

I.      BACKGROUND and INTRODUCTION

In the operative complaint, Plaintiff alleges that on September 26, 2013,

Defendants Manzella, Adams, and Amons "fabricated a frivolous disciplinary report

[("DR")]," Log # 102-132155, claiming that Plaintiff had used profane language

toward them (ECF No. 15 at 6).  Plaintiff alleges he did not use profane language, and

that these Defendants fabricated the DR after becoming aware that Plaintiff had

previously filed grievances alleging racial discrimination and had, directly or through

another source acting on his behalf, contacted the Office of the Inspector General

("IG") to report that Plaintiff was experiencing retribution "at the hand of ACI

Officials for seeking mandamus action" in the State courts (id.).

More specifically, as to the events surrounding the DR, Plaintiff claims that on

September 26, 2013, at approximately 1:30 p.m., he was stopped by Defendants

Manzella, Adams, and Amons while returning from lunch and advised by these

Defendants that they were aware of Plaintiff's grievances and contact with the IG's

---

[2] There is no indication on the docket that Defendant Crews has been served.

office (ECF No. 15 at 6).  Plaintiff was also advised that the ACI warden was "sick and tired of his 'shit'" (*id*.).  Plaintiff states that although he did not use profane language as the officers have alleged, he was handcuffed behind his back and escorted for a "Medical Pre-Confinement Assessment" (*id*.).  During this assessment, Plaintiff "exercised his right to declare a mental health emergency" and requested counseling from "Dr. Rupnick, who was familiar with the ongoing retaliation," but Plaintiff never received counseling (*id*. at 6–7).  Plaintiff states that Defendants Wilkes, Adams, Deese, and Amons were present when his request for counseling was made, as was Nurse Dianna Medina (*id*.).  Plaintiff next alleges he was taunted and threatened by Defendant Manzella, following which Defendants Deese and Amons "violently yanked" Plaintiff from his chair, pulling him up from underneath his arms, and "slammed" him head first onto the floor (*id*. at 7).  Plaintiff states he was "on the floor face down," dazed, passive, and submissive, yet he was then was picked up "hog-style" by Defendants Deese and Amons and "dropped and dragged violently voluminous times" as he was taken out of the medical building (*id*.).  He also alleges that during his transport his "face and head [were] violently slammed into approximately four doorframes" (*id*.).

Once Plaintiff had been taken outside, Defendant Deese "kneed" him approximately five times on the left side of head and face while Defendants Amons and Wilkes kicked Plaintiff's head, neck, and back approximately three times, after which Plaintiff lost consciousness (*id*.). According to Plaintiff, when he regained consciousness, he "found himself in the hallway of the Administrative Confinement Unit" pinned up against a wall[3] (*id*.). Plaintiff noticed that another officer was present with a video camera, but when Plaintiff attempted to "voice and record" what had transpired prior to his losing consciousness, he was told to shut up (*id*. at 7–8). Plaintiff was placed in a strip cell for use when chemical agents are administered, and Defendant Wilkes ordered that the camera be turned off. Defendant Wilkes then threatened Plaintiff with "death or great bodily harm" and referenced Plaintiff's "known cardiology health problems" (*id*. at 8).

Later on the same date, after a shift change at approximately 9:00 p.m., Captain Prigett observed Plaintiff's injuries and ordered that the they be documented on videotape, along with Plaintiff's extraction from the strip cell (ECF No. 15 at 8).

---

[3] Plaintiff believes the officers inflicted additional strikes while he was unconscious based on the nature and extent of the injuries he discovered after regaining consciousness (*see* ECF No. 15 at 9, ¶ 22).

Case No.: 5:13cv382/WS/EMT

Plaintiff was placed in the infirmary for treatment and head trauma observation (*id*.).

The following day, September 27, 2013, while he was still in the infirmary, Plaintiff

lost consciousness again and fell to the floor, hitting his head on the bed and floor,

which resulted in "lacerations and [a] large amount of bleeding" (*id*.).  Plaintiff states

that a nurse, Ms. Gunn, "advocat[ed] for a trip to the emergency room," and that he

was prepped for transport by an ambulance that was en route, but Nurse Medina "with

the assistance of" the warden cancelled the trip to the emergency room (*id*.).  Plaintiff

remained in the infirmary through October 2, 2013, when he was moved to a "punitive

solitary confinement unit within a stripped cell through October 14, 2013" (*id*.).

Plaintiff claims he was on strip-cell status for nearly three weeks, from September 26

through October 14, 2013 (*id*.).

Plaintiff states that on October 15, 2013, he was provided limited personal

property and "was denied and not provided with stationary [sic], nor grievance forms

DC6-236 [the informal grievance form] and DC1-303 [the formal grievance form],"

though he evidently asked three housing officers for paper and/or grievance forms (*see*

ECF No. 15 at 9).  Plaintiff thus contends that "Administrative Remedies were

rendered unavailable to him as a result of prison officials['] conduct preventing him

from timely submitting his grievance on this matter within 20-days" (*id*.).  Plaintiff also claims he "properly exhausted administrative remedies through his 'approved' extension of time and grievances" (*id*. at 10), alleging that ACI Warden Felicia Nobles approved his requests "for extensions of time to file grievances" on November 26, 2013 (*id*. at 9) (facts relating to the exhaustion issues are discussed more fully *infra*).

Plaintiff alleges he suffered multiple physical injuries as a result of Defendants' conduct, including a fractured nose, ripped ear lobe, and lacerated eyebrow, and that he presently suffers from a variety of ailments, including "nose disfigurement, difficulty with airway nasal passage, intermittent [dizzy] spells, migraine headaches, memory lapses, chronic neck pain, and visible scare over eyebrow and scalp," for which he "continuously seeks medical treatment" (ECF No. 15 at 9).  He also notes that in late December 2013 he was hospitalized at the Cardiology Unit of the Bay Medical Center for three days (*id*.).  Claiming violations of the First and Eighth Amendments, Plaintiff seeks as relief a preliminary injunction; declaratory judgments; punitive, compensatory, and other monetary damages from each Defendant; a transfer

from the FDOC; a written letter of apology from each Defendant; and expungement of his disciplinary records for the year 2013 (*id*. at 11).[4]

## II.    EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'"  Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)).  The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process.  Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).  "[T]o properly exhaust administrative remedies prisoners must 'complete the

---

[4] At the end of Plaintiff's Statement of Claims, he alleges that Defendant Adams violated his constitutional rights by "conspiring with fabricating" two DRs, Log # 102-132155 and Log # 102-132547.  The former DR is the one issued on September 26, 2013, discussed above, but Plaintiff did not include any factual allegations as to the latter DR in his complaint.  Defendants note that the latter DR was issued on November 17, 2013, after Plaintiff allegedly threatened Defendant Adams during a counseling session (*see, e.g.*, ECF Nos. 36 at 3; 36-1 at 11).  Plaintiff submitted a formal grievance to the ACI Warden regarding the DR on or about November 22, 2013 (Log # 1311-102-118), which was approved to the extent that Plaintiff's allegations were forwarded to the IG's office for review (*see* ECF No. 36-1 at 10–11).

administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Jones v. Bock</u>, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting <u>Woodford</u>, 548 U.S. at 88).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Turner</u>, 541 F.3d at 1082.  "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.*  "First, the court looks to the factual allegations

in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  *Id.* (citing Jones, 549 U.S. 199); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)).  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  *Id.* at 1083.

In Florida, generally, a prisoner must:  (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary of the FDOC on Form DC1-303.  *See* Chandler v.

<u>Crosby</u>, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007).[5]

Informal grievances must be received by the reviewing staff member "within 20 days of when the incident or action being grieved occurred . . . ." Fla. Admin. Code r. 33-103.011(1)(a).[6]  The reviewing staff member must complete and provide to the inmate a written response within ten calendar days of the initial receipt of an informal grievance.  *See id.*, r. 33-103.011(3)(a); *see also, id.,* r. 33-103.005(4)(a). Unless the inmate has agreed in writing to an extension of the time limit for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process.  *See* Fla. Admin. Code r. 33-103.011(4).  If this occurs, the inmate must clearly indicate this fact when filing at the next step.  *Id.*

An inmate may bypass the informal grievance step and file a direct formal grievance if the grievance is of a certain nature, for example, a medical grievance or grievance of an emergency nature, reprisal, or disciplinary action.  *See* Fla. Admin.

---

[5] The court cites provisions of the Florida Administrative Code in effect during the time period relevant to the exhaustion issue in this case.

[6] Thus, in this case, an informal grievance regarding the use of force on September 26, 2013, must have been submitted by Plaintiff on or before October 16, 2013.

Code rr. 33-103.005(1), 33-103.006(3).  A formal grievance must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from:  (1) the date of the response to the informal grievance; or (2) the date on which the incident or action being grieved occurred, if the inmate has properly bypassed the informal grievance process and submits a direct formal grievance.  *See* Fla. Admin. Code r. 33-103.011(1)(b).[7]  The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, r. 33-103.011(3)(b).

Grievance appeals to the Central Office must be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate.  Fla. Admin. Code r. 33-103.011(1)(c).  The Central Office must respond to the grievance appeal within 30 calendar days from the date of receipt of the grievance.  *See id.*, r. 33-103.011(3)(c).[8]

---

[7] Thus, in this case, a formal grievance regarding the use of force on September 26, 2013, must have been submitted by Plaintiff on or before October 11, 2013.

[8] An inmate may also bypass the institutional grievance process and submit a direct grievance to the Central Office if the grievance is a grievance of reprisal or concerns an emergency.  Fla. Admin. Code r. 33-103.007(6).  The inmate must utilize FDOC Form DC1-303.  *Id.*  The inmate shall state at the beginning of Part A of the form that the grievance concerns either an emergency or is a grievance of a reprisal and must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility.  *Id.*  Direct grievances to the Central Office must be received within 15 calendar days from the date on which the incident or action which is the subject of the

An informal grievance, formal grievance, or grievance appeal may be returned

to the inmate without further processing and without a response on the merits for any

of the following twenty-four reasons set forth in Fla. Admin. Code r. 33-

103.014(1)(a)–(x):

(a)     The grievance addresses more than one issue or complaint.

(b)     The grievance is so broad, general or vague in nature that it cannot
be clearly investigated, evaluated, and responded to.

(c)     The grievance is not written legibly and cannot be clearly
understood.

(d)     The formal grievance was not received within 15 calendar days of
the date of the response to the informal grievance.

(e)     The formal grievance was not received within 15 calendar days of
the date on which the incident or action being complained about
occurred, if an informal grievance was not filed pursuant to
subsection 33-103.006(3), F.A.C.

(f)     The inmate did not provide a valid reason for by-passing the
previous levels of review as required or the reason provided is not
acceptable. This evaluation is made on a case by case basis and
the reasons for rejecting the complaint will vary with the facts
alleged in the complaint.

(g)     The grievance did not have the attachments required: informal
grievance and response, except as allowed for in paragraphs
33-103.006(3)(a) through (h), F.A.C., or the formal grievance and
response, except as provided for in subsection 33-103.007(6),
F.A.C.;

(h)     The direct grievance to the Office of the Secretary was not
received within 15 calendar days of the date that the incident or
action being grieved occurred; or

grievance occurred. *Id.*, r. 33-103-011(1)(d).

(i)    The grievance appeal was not received within 15 calendar days from the date of the response to the formal grievance.

(j)    The inmate has not filed his grievance at the location he is presently assigned to as required in subsection 33-103.015(4), F.A.C.

(k)    The inmate has written his or her complaint outside of the boundaries of the space provided on the grievance form or request form.

(l)    The inmate has used multiple copies of grievance forms rather than attachments as continuation sheets.

(m)    A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.

(n)    The inmate is grieving a matter beyond the control of the Department as described in subsection 33-103.001(4), F.A.C.

(o)    The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level. (Since this is an appellate review process and not a fact-finding process, it is not appropriate to raise new allegations, charges, and facts that the previous decision maker has not had an opportunity to investigate and respond to.)

(p)    The inmate has filed more than one appeal of a grievance. This would not include the situation where an inmate wishes to appeal the denial of his grievance as well as allege non-compliance with the grievance process. Since these are two separate issues, they would have to be raised in separate grievances.

(q)    The inmate has filed a supplement to a grievance or appeal that has already been accepted. An exception will be made when the supplement contains relevant and determinative information that was not accessible to or known by the inmate at the time the original grievance or appeal was filed.

(r)    Complaints are raised by an inmate regarding incidents that do not affect the inmate personally.

(s)    The inmate filed a grievance at the institutional level that should have been filed directly with the Office of the Secretary.

(t)    The inmate used more than two (2) additional narrative pages.

(u)     The inmate filed an informal grievance in excess to 20 days from the time the event being grieved occurred.

(v)     The inmate is using the grievance process to ask questions or seek information, guidance or assistance.

(w)     The inmate is filing an informal grievance about being physically restrained pursuant to Rule 33-602.211, F.A.C. either beyond the initial required timeframe without first requesting and obtaining an extension, or has filed beyond an approved 45 day extension.

(x)     The inmate fails to use his committed name pursuant to Rules 33-603.101 and 33-103.006, F.A.C., when completing a grievance.

Fla. Admin. Code r. 33-103.014(1)(a)–(x); *see also, id.*, r. 33-103.007(2)(f).

An inmate who has a grievance returned to him for the reasons listed above—except reasons (d), (e), (h), (i), (m), (n), (p), (q), (r), (u), (v) or (w)—may refile the grievance utilizing the proper procedure or correct the stated deficiency if the refiling is within the allowable time frames.  *See id.*, r. 33-103.014(2). Additionally, when a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order to receive administrative review of his complaint he must correct the defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, unless instructed otherwise in the grievance response.  Finally, instructions regarding re-submission of a grievance are not necessary if the grievance is returned for the reasons listed in Rule

33-103.014(1)(d), (e), (h), (i), (m), (n), (p), (q), (r), (u), (v) or (w).  Fla. Admin. Code
r. 33-103.014(2).

III.   ANALYSIS

In support of their motion to dismiss, Defendants have submitted declarations
and accompanying exhibits from two employees of the FDOC.  The first, Elaine
Hines, avers that she searched FDOC records for all non-medical informal and formal
grievances submitted by Plaintiff at the institutional level between September 26,
2013, and November 13, 2013 (doc. 36-1 at 1–2).  She states that all such grievances
submitted by Plaintiff were denied or returned without action except one informal
grievance (Log # 13-10-1597) and two formal grievances (Log ## 1310-102-116 and
1311-102-062) (*id*.).  Continuing, Ms. Hines states she also searched institutional
records "for all informal and formal grievances filed by [Plaintiff] that were approved
on November 26, 2013," and she determined that "two formal grievances met these
parameters," Log ## 1311-102-118 and 1311-102-119 (*id*.).  The five grievances
specifically referenced by Ms. Hines are attached to her declaration (*see* ECF No. 36-1
at 3–13).  The second, Shirley A. Johnson, avers that she searched FDOC records for
all non-medical grievances appeals or direct grievances received by the Bureau of
Inmate Appeals (also known as the FDOC's Central Office) between September 26,

2013, and November 13, 2013 (ECF No. 36-2 at 1–2).  She states that the Central

Office received four non-medical grievances (Log ## 13-6-34665, 13-6-35366, 13-6-

35367, and 13-6-35495) (*id*.).  The four grievances are attached to Ms. Johnson's

declaration, as is a computer printout that summarizes the results of Ms. Johnson's

search (*id*. at 3–24).

Defendants assert that although two formal grievances submitted at the

institutional level, Log ## 1311-102-118 and 1311-102-119, were approved on

November 26, 2013, neither grievance addressed the use of force on September 26,

2013, and the latter grievance concerned the alleged conduct of an individual who is

not named as a Defendant in this action (ECF Nos. 36 at 6; 36-1 at 1–2).  Defendants

additionally note that Plaintiff instituted this action on November 11, 2013, prior to

the approval of his formal grievances, and thus Plaintiff had not completed the

grievance process as to those grievances prior to initiating this suit, as is required

(ECF No. 36 at 6; *see also* ECF No. 1 at 8 (reflecting that Plaintiff delivered his

original complaint to prison officials for mailing on November 11, 2013; the

complaint was received by this court two days later, on November 13, 2013)).

Defendants also point out that the "approval" of these grievances by Warden Nobles

was not an approval of a request by Plaintiff to file untimely grievances (*see* ECF No. 36 at 3, 6–8).

Defendants next note that Plaintiff filed six grievance appeals between September 26, 2013, and November 13, 2013, but that none of these satisfy the exhaustion requirement.  Defendants assert that two grievance appeals, Log ## 13-6-34352 and 13-6-34574, are grievances of a medical nature and thus do not concern the claims at issue in this case (ECF No. 36 at 7; *see also* ECF No. 36-2 at 23).  Next, Defendants discuss the four non-medical grievance appeals referenced by Ms. Johnson in her declaration.  Defendant's argue that one of those four, Log # 13-6-34665, concerns an allegation of an act of retaliation by Defendant Deese on October 21, 2013, and it was returned to Plaintiff without action for not being in compliance with the inmate grievance procedure.  As to the remaining three grievance appeals, Log ## 13-6-35366, 13-6-35367, and 13-6-35495, Defendants acknowledge that they do reference conduct from September 26, 2013, but Defendants assert they focus on procedural problems associated with three separate DRs issued to Plaintiff. Defendants note that each formal grievance filed at the institutional level, which preceded the three corresponding grievance appeals, contained the following statement by Plaintiff:  "Only one issue or complaint is raised in this [grievance]

appeal, to wit:  improper [or lack of] due process with disciplinary action . . . ." (*id.*).

Thus, Defendants argue, "It is evident the focus of these grievance appeals was not on

alleged excessive use of force, retaliation, or deliberate indifference that is at issue in

this case." (*id.*) (footnote omitted).

In opposing Defendants' motion, Plaintiff submitted his own affidavit stating

that formal grievance forms (DC1-303) were not made available to him within the

twenty-day time frame permitted for filing a formal grievance (ECF No. 38 at 2).[9]  He

further states that the formal grievance forms were "only made available to [him] after

October 21, 2013, at which time [he] did request an extension of time, that was

approved" (*id.*).  He claims he then "immediately submitted informal and formal direct

grievances of apprisal against each and every defendant and claim pled within [his]

Amended Complaint" but that those grievances "were maliciously discarded and

mishandled by prison officials" (*id.*).   Continuing, Plaintiff claims that "upon

discovering this malfeasance, [he] began contacting outside state officials in order to

substantiate [his] due diligence with exhausting administrative remedies" and, as a

result, "State officials at the Governor's Office responded by contacting the Office of

---

[9] As discussed *supra*, Plaintiff had twenty days (from September 26, 2013) to file an informal
grievance utilizing FDOC Form DC6-236; he had fifteen days to submit a formal grievance utilizing
FDOC Form DC1-303.

Inspector General.   [Plaintiff] was then instructed to grieve this matter—now monitored by Inspectors—and those grievances were approved (#1310-102-116 & 1311-102-118 & 1311-112-119)." (*id*.).  Plaintiff claims that the IG's office advised him that "continued grievances were not necessary, because all matters had been referred to them" (*id*. at 3).  Lastly, Plaintiff describes other measures he took in "exercis[ing] a tremendous amount of due diligence to exhaust 'available' administrative grievance procedures by relentlessly complaining about discarded grievances and ongoing abuse," such as seeking reports from the IG's office and attempting to contact Captain Prigett and a physician at ACI (*id*.).   In an accompanying memorandum, Plaintiff reiterates that his grievances were intentionally mishandled (*see, e.g.*, ECF No. 38 at 7).  In support, he states that the records search conducted by Ms. Hines and/or Ms. Johnson shows that grievance appeals "did not resume until October 25, 2013, because grievances where [sic] deliberately discarded and mishandled," and he notes that he complained of such in the grievances attached to Defendants' motion to dismiss and that those grievances "negate any 'exhaustion' defense" (*id*. at 7–8).   Finally, Plaintiff included with his response various attachments, such as letters or other correspondence relating to his state court

litigation and the IG's investigation, as well as duplicates of some of the grievances submitted by Defendants as attachments to their motion to dismiss.

The undersigned accepts for the sake of discussion the following two contentions made by Defendants:

(1)  The formal grievances submitted by Plaintiff at the institutional level that were approved on November 26, 2013 (Log ## 1311-102-118 and 1311-102-119) do not satisfy the exhaustion requirement.  In approving these grievances, Warden Nobles clearly did not approve any request by Plaintiff to file untimely grievances. Additionally, Log # 1311-102-118 addressed alleged misconduct by Defendant Adams on November 17, 2013 (i.e., falsely claiming that on November 17, Plaintiff threatened Adams while Adams was allegedly counseling Plaintiff (*see* ECF No. 36-1 at 11)), which conduct occurred after Plaintiff initiated the instant action.[10]  Similarly, Log # 1311-102-119 addressed alleged misconduct by ACI Correctional Officer J. Holland on November 21, 2013 (i.e., allegedly threatening Plaintiff on November 21

---

[10] Plaintiff alleges in the grievance that Adams' conduct of November 17 was, essentially, a continuation of the retaliatory actions taken against Plaintiff due to his pursuit of federal civil rights actions against the ACI warden and ACI correctional officers (*see* ECF No. 36-1 at 11).  The grievance as to Adams' conduct was approved to the extent that a "review of [Plaintiff's] allegations" was referred to the IG's office (*see* ECF No. 36-1 at 10).

(*see* ECF No. 36-1 at 13)), which conduct also occurred after Plaintiff initiated the instant action;[11] and

(2)  The four non-medical grievance appeals submitted to the FDOC's Central Office (Log ## 13-6-34665, 13-6-35366, 13-6-35367, and 13-6-35495) do not satisfy the exhaustion requirement.  The first indeed concerned an allegation of an act of retaliation by Defendant Deese on October 21, 2013, as Defendants contend, and it was returned to Plaintiff without action because it did not comply with the inmate grievance procedures (*see* ECF No. 36-2 at 3–4).  In the remaining three grievance appeals Plaintiff grieved only one issue or complaint, that is, improper due process or a lack of due process in disciplinary proceedings (*see* ECF No. 36-2 at 8, 14, 18), and as relief he sought expungement of the DRs at issue and restoration to his original general population status (*see id.* at 9, 15, 19).  Because these grievances did not address the First and Eighth Amendment claims raised in this action, those claims were not exhausted in the grievance appeals submitted to the Central Office.

---

[11] Plaintiff alleges in the grievance that Holland's conduct of November 21 was, essentially, a continuation of the retaliatory actions taken against Plaintiff due to statements made by Plaintiff in relation to disciplinary proceedings and Plaintiff's pursuit of federal civil rights actions against the ACI warden and ACI correctional officers (*see* ECF No. 36-1 at 13).  The grievance as to Holland's conduct was also approved to the extent that a "review of [Plaintiff's] allegations" was referred to the IG's office (*see* ECF No. 36-1 at 12).

Even accepting the foregoing contentions as true, however, dismissal of this action at this juncture is inappropriate based on the record before the court.   In particular, the court notes the statement by Ms. Hines that grievances submitted by Plaintiff at the institutional level between September 26 and November 13, 2013, were denied or returned without action except one informal grievance (Log # 13-10-1597) and two formal grievances (Log ## 1310-102-116 and 1311-102-062).  Defendants do not specifically discuss these three grievances in their motion; instead, they generally claim that "[t]he only approved informal and formal grievances filed by Plaintiff from this time frame do not concern matters at issue in this lawsuit" (ECF No. 36 at 6–7 & n.2).  The undersigned agrees that the approved informal grievance (Log # 13-10-1597) and one of the approved formal grievances (Log # 1311-102-062) do not pertain to matters at issue in this lawsuit (*see* ECF No. 36-1 at 3, 7–9).  The same cannot be said, however, with respect to the other approved formal grievance submitted by Plaintiff at the institutional level (Log # 1310-102-116).

<u>Formal Grievance, Log # 1310-102-116 (found at ECF No. 36-1 at 4–6)</u>

On October 29, 2013, Plaintiff submitted a direct grievance to the ACI warden, utilizing the appropriate form, DC1-303, and it was assigned Log # 1310-102-116. Plaintiff explained in the grievance that he was bypassing the informal grievance

process because the grievance was a grievance of reprisal directed at a staff member,

ACI Assistant Warden "Mr. Hancock."  Plaintiff complained that Mr. Hancock had,

with a "malicious purpose," interfered with Plaintiff's ability to utilize the prison

grievance process.  In pertinent part, Plaintiff alleged that Mr. Hancock had, "as a

campaign of ongoing harassment and retribution," denied or returned seven grievances

"without process," Log ## 1310-102-048, 1310-102-053, 1310-102-079, 1310-102-

080, 1310-102-087, 1310-102-099 (although Plaintiff states seven were returned

without process, he listed only six log numbers).  Plaintiff further alleged that Mr.

Hancock had discarded three direct grievances to the Central Office.[12]  Plaintiff

additionally alleged that he attempted to submit two direct grievances to the ACI

Warden, but on September 28, 2013—"in direct response" and "as a sole act of

reprisal, to [Plaintiff's ongoing state and federal litigation[13] . . . and] the unlawful use

---

[12] Plaintiff made similar allegations in an attachment to his grievance appeal, Log # 13-6-35366.  More specifically, he alleged that since September 26, 2013, six grievances he had submitted directly to the Central Office "[went] missing" (*see* ECF No. 36-2 at 10).  He additionally claimed that Mr. Hancock had conspired with ACI Warden Nobles to prevent Plaintiff from submitting any direct grievances to the Central Office and that Mr. Hancock had advised the ACI grievance coordinator and ACI security staff to allow Plaintiff to pursue administrative remedies only at the institutional level (*id.*).

[13] Plaintiff identifies the federal litigation as Harris v. Nobles, No. 5:13cv203/MMP/GRJ. In other grievances, Plaintiff alleged that Defendants' retaliatory conduct was additionally due to Plaintiff's filing another civil rights lawsuit in this district, Harris v. Manzella, No. 5:13cv372/LAC/EMT (*see, e.g.*, ECF No. 36-1 at 11).

of force . . . of 9/26/13," Mr. Hancock improperly responded to the grievances instead of the Warden and denied them.  Plaintiff further complained that Mr. Hancock had, on more than one occasion, advised Plaintiff that none of his grievances would be approved, that "the DRs are going to keep coming," and that Plaintiff would be buried in confinement and close management.  On November 5, 2013—six days before Plaintiff initiated the instant action—this formal grievance was approved to the extent that Plaintiff's allegations were sent to the IG's office for review.

In light of the approval of Plaintiff's formal grievance, Log # 1310-102-116, it appears that Plaintiff likely has exhausted his administrative remedies at least with respect to his First Amendment claims.  Moreover, given that the First Amendment claims largely center on allegations that Plaintiff could not administratively exhaust his Eighth Amendment excessive force claims, it would be inappropriate at this stage in the litigation to conclude that Plaintiff failed to exhaust "available" administrative remedies as to his Eighth Amendment claims.

IV.    CONCLUSION and RECOMMENDATIONS

In light of the foregoing, the undersigned recommends that Defendants' motion to dismiss be denied. However, the undersigned recommends that the denial be without prejudice to Defendants' raising the exhaustion issue again, given that there

appear to be factual matters that remain unresolved, particularly with regard to Plaintiff's allegedly discarded grievances and also the involvement of the Office of Inspector General and how that might have affected the exhaustion process.[14]

Based upon the foregoing, it is respectfully **RECOMMENDED**:

That Defendants' Motion to Dismiss (ECF No. 36) be **DENIED without prejudice**.

At Pensacola, Florida, this 22nd day of January 2016.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[14]  Additionally, while the crux of Plaintiff's opposition to the motion to dismiss is that he was prevented from submitting timely grievances between September 26, 2013, and October 15, 2013, institutional records suggest that Plaintiff was able to submit grievances during (and after) the relevant time (see, e.g., ECF No. 36-1 at 3).   Moreover, Plaintiff contends that six or seven grievances were improperly "denied or returned" by Mr. Hancock.  Plaintiff states that two of these, which were returned to him on September 28, 2013, were improperly denied or returned as retaliation for the events of September 26.  Thus, Plaintiff's own statements indicate that he was actually able to file grievances during the relevant time.  In this regard, Plaintiff is reminded that his statements made under oath, if shown to be false, could subject him to civil sanctions or even criminal action for perjury.  See, e.g., Fed. R. Civ. P. 11; 18 U.S.C. § 1621(2).

Furthermore, Plaintiff does not state when he submitted the other five or six grievances that he alleges were denied or returned by Mr. Hancock, nor does he identify the subject matter of any of the grievances at issue.  If these grievances concerned the events of September 26, 2013, and were denied for permissible reasons, and if Plaintiff failed to appeal them—or if they were returned to Plaintiff with an option to resubmit them and Plaintiff failed to do so—then it would appear that Plaintiff failed to properly exhaust available administrative remedies as to the events of September 26, 2013.  But the court has insufficient information before it to make such a finding.

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.