IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUIS MUNUZURI HARRIS,
     Plaintiff,

vs.                         Case No.: 5:13cv382/WS/EMT

DEREK L. WILKES, et al.,
     Defendants.
                              /

## REPORT AND RECOMMENDATION

Before the court is Plaintiff's Motion for Relief from Judgment (ECF No. 124), filed pursuant to Fed. R. Civ. P. 60(b). Defendants filed a response to the motion (ECF No. 131), after which Plaintiff submitted a Notice of Filed Supplemental Pleading (ECF No. 133).[1] The matter was remanded to the undersigned magistrate judge for a report and recommendation as to the disposition of this motion pursuant to 28 U.S.C. § 636(b)(1)(B) (*see* ECF No. 128).

Plaintiff's motion concerns a settlement agreement that he entered into with Defendants, following which the parties filed a joint notice of voluntary dismissal

---

[1] Plaintiff also filed a Motion to Strike Defendants' Response (ECF No. 134), based on his contention that it quoted from parts of the court's earlier order on his Motion for Relief from Judgment, such order having thereafter been vacated by the court. The fact that an order was vacated does not mean a party is forbidden from using it, and moreover, while the court vacated this order, it emphasized that it took "no position on the merits of the plaintiff's Rule 60(b) motion at this time" (*see* ECF No. 128). Accordingly, the motion to strike should be denied.

with prejudice on January 18, 2017 (ECF No. 115).  Plaintiff, an inmate in the Florida Department of Corrections, contends that his settlement of this cause of action was the result of duress, which resulted in him agreeing to settle for significantly less money than he would or should have received.  Plaintiff also claims fraud, based on his assertion that Defendants unfairly took funds out of his prison account that were derived from his settlement to pay the filing fees in this and/or other cases he has filed with this court.

As an initial matter, in Anago Franchising, Inc. v. Shaz, LLC, 677 F.3d 1272, 1279 (11th Cir. 2012), the Eleventh Circuit held that, once a voluntary dismissal is entered pursuant to stipulation of the parties under Federal Rule of Civil Procedure 41(a)(1)(ii), as was done in this case (ECF Nos. 115, 116), the court is thereafter divested of jurisdiction and cannot entertain orders to enforce the settlement agreement.  *Id.* at 1279–80.  It has been recognized, however, that motions seeking relief from judgment pursuant to Rule 60(b) might represent one of the few exceptional areas where the court may maintain collateral jurisdiction.  *See* Kokkonen v. Guardian Life Ins. Co. of America, 114 S. Ct. 1673, 1675–76, 511 U.S. 375, 378 (1994) (noting without deciding that some courts of appeals have found jurisdiction to be maintained under Rule 60(b)(6) after stipulation for voluntary dismissal); *see*

*also* <u>Hendrickson v. United States</u>, 791 F.3d 354, 360–61 (2d Cir. 2015). The court will therefore review Plaintiff's motion in the context of a Rule 60(b) motion for relief from judgment, but will not consider it to the extent it might be construed as a motion to enforce the terms of the settlement agreement.[2]

In relevant part, Rule 60(b) provides that the court "may relieve a party . . . from a final judgment, order, or proceeding for . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Under Rule 60(b)(3), fraud must be proven by clear and convincing evidence. <u>Jackson v. Con Way Transp. Services, Inc.</u>, 222 F. App'x 887, 891 (11th Cir. 2007) (citing <u>Waddell v. Hendry County Sheriff's Office</u>, 329 F.3d 1300, 1309 (11th Cir. 2003)). The movant must affirmatively demonstrate "compelling" circumstances that are "sufficiently extraordinary to warrant relief." <u>Cano v. Baker</u>, 435 F.3d 1337, 1342 (11th Cir. 2006) (internal quotations omitted); *see also* <u>Aldana v. Del Monte Fresh Produce N.A., Inc.</u>, 741 F.3d 1349, 1355 (11th Cir. 2014); <u>Toole v. Baxter Healthcare Corp.</u>, 235 F.3d 1307, 1317 (11th Cir. 2000). The decision whether to grant Rule 60(b) relief is "a matter for the district court's sound discretion." <u>Cano</u>, 435 F.3d at 1342.

---

[2] Plaintiff does not overtly seek to enforce the settlement agreement per se; rather, he appears to seek rescission of the agreement and re-opening of the case.

Rule 60(b) does not specifically mention duress.[3]   Nonetheless, when interpreting settlement agreements, the court looks to the law of Florida.  Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000).   While Florida courts highly favor enforcement of settlement agreements, a court may set aside a settlement agreement obtained by means of fraud or duress.  Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985); Vitakis-Valchine v. Valchine, 793 So.2d 1094, 1096 (Fla. 4th DCA 2001).

To establish duress as defined in Florida, "[I]t must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side.  Underlying all definitions of 'duress' is the dual concept of external pressure and internal surrender or loss of volition in response to outside compulsion."  City of Miami v. Kory, 394 So. 2d 494, 497 (Fla. 3d DCA 1981) (internal quotations omitted).  The essential elements of fraud are: "(1) a false statement of fact: (2) known by the defendant to be fraudulent at the time it was made;

---

[3]  Although duress is not specifically provided for in Rule 60(b), the rule allows judgment to be set aside for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Although the Eleventh Circuit has "has carefully constrained this open-ended language" to cover only those circumstances that are "sufficiently extraordinary to warrant relief," Aldana v. Del Monte Fresh Produce N.A., Inc., 741 F.3d 1349, 1355 (11th Cir. 2014) (internal quotation marks and citation omitted), the court will consider Plaintiff's claim of duress under this provision.

(3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff." Poliakoff v. National Emblem Ins. Co., 249 So. 2d 477, 478 (Fla. 3d DCA 1971); *see also* Abbate v. Nolan, 228 So. 2d 433, 435 (Fla. 4th DCA 1969).

In the instant case, Plaintiff alleges duress by stating the following. He alleges that counsel for Defendants held an abrasive attitude and that, apparently as a negotiating ploy, counsel asserted that inmates were not credible. This resulted in Plaintiff responding via letter that the negotiations should cease because they were not being productive. Plaintiff also states he referenced or included the letter in a subsequently filed discovery motion as he resumed prosecuting the case. Plaintiff then provides the following:

> Then, in late November of 2016 Plaintiff sent a distressful letter to the Department's counsel stating that he would give into and agree to a five thousand dollar ($5,000.00) settlement of this case and an unrelated small-claims case in exchange for contacting the Office of the Inspector General to report on-going illegal conduct that made it impossible for Plaintiff to fully and fairly present his case.

(ECF No. 124 at 4). Plaintiff then states that counsel "immediately exploited Plaintiff's condition of duress" (which he states was derived from unspecified retaliatory conduct at the prison where he was incarcerated) by arranging this

settlement according to its terms.  *Id.*  Plaintiff additionally contends that during a conference call he reiterated his terms for the settlement, including contacting the Inspector General,[4] and counsel allegedly stated he would do so but warned Plaintiff that by doing so Plaintiff might be subjected to further retaliatory activity.  *Id.* at 4–5. By stating this, explains Plaintiff, counsel exploited Plaintiff's fear of further retaliation, and as a result Plaintiff agreed to the settlement.  *Id.* at 5.

Plaintiff's claims fall well short of establishing duress.  There is no indication or inference to be drawn from Plaintiff's allegations that his assent to the agreement was essentially involuntary or without free will, nor is it evident that Defendants' counsel acted in an especially coercive manner.  Plaintiff's allegations are largely vague and conclusory, and virtually any prisoner would be able to say the same thing about fear of retaliation in the prison environment.  Moreover, there is no indication that counsel was in any way *responsible* for the retaliation; far from it, it appears counsel was simply describing what he perceived as an unfortunately common feature of prison life.  As counsel for Defendants indicates, he could have informed the Inspector General regarding Plaintiff's complaints or concerns, but he could not have

---

[4]  In an Objection to an order of the undersigned, Plaintiff appears to state that notifying the Inspector General was ultimately not a part of the settlement agreement (ECF No. 127 at 4). Defendants corroborate that contacting the Inspector General was not agreed upon as a settlement term (ECF No. 131 at 3–4).

ensured the anonymity that Plaintiff evidently requested because others might speculate as to the source of complaints (ECF No. 131 at 3).

Next, Plaintiff's claim that counsel committed fraud is based on a provision in the agreement providing that the $4,400.00 settlement award would be paid into his prison account and that "all liens on that account at the time of payment will be satisfied from the settlement funds" (ECF No. 124 at 6, ex. A). Plaintiff claims that funds were taken out of his account well after the date that the settlement money was placed into the account, and therefore this amounted to a fraud against him.

The issue of his prison account has been previously presented to the court and ruled upon (ECF Nos. 119, 120, 122, 123). In resolving this issue, the court stated that the funds from Plaintiff's inmate account were appropriately withdrawn in payment of the filing fee (in this case and in Plaintiff's two other cases filed in this court, Case No. 5:13cv203 and Case No. 5:13cv372) in accordance with the formula set out in 28 U.S.C. § 1915(b)(2) (ECF No. 123).

Plaintiff contends that the date upon which the withdrawal was made indicates fraud. This case commenced in 2013, and with the granting of Plaintiff's motion to proceed in forma pauperis on December 4, 2013 (ECF No. 6), prison officials were authorized, pursuant to 28 U.S.C. § 1915(b)(2), to extract twenty percent of incoming

funds toward the paying the entire filing fee of $350.00. Thus, when Plaintiff received the settlement funds of $4,400.00 into his account on January 18, 2017, prison officials were statutorily authorized to extract the full amount of $350.00, which represents less than twenty percent of the deposit.[5] Plaintiff's own prison account records, which he submitted as an exhibit, show the deposit of the settlement funds and the extraction of the $350.00 for the filing fee in this case, both on January 18, 2017 (ECF No. 124 at 14, 15; *see* line item 6 on p. 15, indicating withdrawal of $350.00, designated as payment in Case No. 5:13cv382). Plaintiff's complaint centers upon a later withdrawal of funds on March 14, 2017, in the amount of $315.00, but the notation on this withdrawal indicates this money was not extracted as payment in this case but in Case No. 5:13cv372, another of Plaintiff's cases filed in this court (ECF No. 124 at 18; *see* line item 7).

Thus, Plaintiff's assertion that the $315.00 was illicitly sent as payment in this case is patently inaccurate because that payment was not even earmarked for this case. The court recognizes that, while payment of the filing fee in this case was withdrawn from Plaintiff's account on January 18, 2017, it was not *received* by the court until

---

[5] That is, the full withdrawal amount was authorized except for the fact that $5.00 had been earlier received on November 8, 2016, as a partial filing fee in this case, which had evidently been overlooked when the $350.00 was paid (ECF No. 104). In an earlier order, the court discovered this mistake and ordered that Plaintiff be refunded the $5.00 (ECF No. 123).

March 14, 2017 (ECF No. 118). Whether this be a normal administrative delay or a particular accounting error concerning the settlement funds in this case is of little import.[6] The withdrawal of funds from Plaintiff's account comports with the terms of the settlement agreement, and more importantly with of 28 U.S.C. § 1915(b)(2). In fact, had the court later learned in this case that Plaintiff had received $4,400.00 into his prison account but had not paid any of the filing fee, it would have ordered Plaintiff to show cause for this failure since this would have been a violation of the in forma pauperis statute (*see also* ECF No. 6, order granting in forma pauperis status, setting out the partial filing fee arrangement, and warning Plaintiff that "he is ultimately responsible for payment of the filing fee should the agency with custody over him lapse in its duty to make payments on his behalf"). Since there is no evidence that money was wrongfully taken from Plaintiff's account, there can be no evidence of fraud.

---

[6] The court takes judicial notice that, in Case No. 5:13cv372, money was similarly taken from Plaintiff's prison account on January 18, 2017, but instead of the full $350.00 that would have been statutorily authorized, only $35.00 was extracted, evidently due to the "typo" error that Plaintiff describes in his motion (ECF No. 127 at 2–3, 7). This $35.00 amount was arrived at the court on March 14, the same day that the $350.00 in the instant case arrived (*see* ECF No. 19 in Case No. 5:13cv372). Nine days later, the error was evidently discovered and the remaining $315.00 was received by the court (*see* ECF No. 20 in Case No. 5:13cv372).

Case No.: 5:13cv382/WS/EMT

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's Motion for Relief from Judgment (ECF No. 124) be

**DENIED**.

2.     That Plaintiff's Motion to Strike Defendants' Response (ECF No. 134)

be **DENIED**.

At Pensacola, Florida, this 18<u>th</u> day of April 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**